1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL RICHARDSON,                         No.  2:17-cv-01838 JAM AC (PS)

12                   Plaintiff,

13        v.                                      FINDINGS AND RECOMMENDATIONS

14   XAVIER BECERRA,

15                   Defendant.

16

17          Plaintiff is proceeding in this action pro se, and the case was accordingly referred to the

18   Magistrate Judge by Local Rule 302(c)(21).  There were initially two defendants named in this

19   case:  Jefferson Sessions, the Attorney General of the United States, and Xavier Becerra, Attorney

20   General of the State of California, both in their official capacity.  Plaintiff has voluntarily

21   dismissed his claims against defendant Sessions pursuant to Fed. R. Civ. P. 41 (a)(1)(A).  ECF

22   No. 17.  Now before the court is defendant Becerra's motion to dismiss.  ECF No. 8.  The motion

23   has been fully briefed, ECF Nos. 16 & 20, and the parties each appeared and participated in oral

24   argument on February 14, 2018.  ECF No. 22.  Having considered the record as a whole and the

25   arguments of the parties, the court recommends that defendant's motion to dismiss (ECF No. 8)

26   be GRANTED.

27   ////

28   ////

                                                  1

**I.     BACKGROUND**

A.     <u>Allegations of the Complaint</u>

Plaintiff filed his complaint on September 5, 2017.  ECF No. 1.  The complaint states that this case is being brought as an "as applied challenge to the constitutionality" of several sex offender registration and notification laws.  <u>Id.</u> at 1.  The content of plaintiff's complaint, as applicable to the remaining defendant, indicates that he is challenging three California state laws: (1) The Sex Offenders Registration Act (SORA, Cal. Penal Code §§ 290-290.24), which requires convicted sex offenders to register with local law enforcement; (2) Megan's Law (Cal. Penal Code § 290.46), which requires the California Department of Justice to post on the Internet certain information about convicted sex offenders; and (3) Jessica's Law (Cal. Penal Code § 3003.5), which restricts where sex offenders may reside while they are on parole.  In plaintiff's responsive briefing he concedes that Jessica's Law does not apply to him, and drops his challenge to that claim.  ECF No. 16 at 15.[1]  Plaintiff also challenges various unnamed local ordinances implemented or applicable to him as a result of SORA and Megan's Law.

Plaintiff asserts that he was convicted of attempted lewd conduct with a minor and sending harmful material to a minor, child molestation, as a result of conduct that occurred in 2004.  ECF No. 1 at 12-13.  Plaintiff was sentenced in June of 2006.  <u>Id.</u> at 56.  He completed his prison sentence and parole supervisions, and asserts he has been a law-abiding citizen since his release.  <u>Id.</u> at 13.

B.     <u>The Claims</u>

Plaintiff's 92 page complaint states nine putative claims: (1) "Right to Reputation;" (2) "Right to Equal Protection;" (3) "Right to Travel and Association and Unconstitutionally Vague;" (4) "Right to be free from Unreasonable, Arbitrary, and Oppressive Official Action;" (5) "Substantive Due Process;" (6) "Ex Post Facto;" (7) "Separation of Powers Doctrine and Bill of Attainder;" (8) "Cruel and Unusual Punishment;" and (9) "Involuntary Servitude."  ECF No. 1 at 16-83.

---

[1]  Plaintiff confirmed at oral argument that he no longer challenges Jessica's Law.

## II.    MOTION TO DISMISS

2      Defendant Becerra moves to dismiss plaintiff's sixth through ninth causes of action.  ECF

3   No. 8 at 9.  He challenges claims six through eight under Fed. R. Civ. P. 12(b)(6), on the ground

4   that these constitutional claims lie only against laws that are punitive in nature, which the

5   challenged laws are not.  Id.  Defendant seeks to dismiss the ninth claim pursuant to Fed. R. Civ.

6   P. 12(b)(6) because none of the challenged laws impose involuntary servitude of the kind

7   prohibited by the Thirteenth Amendment.  Id.  Further, defendant argues that plaintiff's claims six

8   through nine should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter

9   jurisdiction, to the extent plaintiff seeks to hold defendant Becerra responsible for the creation

10  and/or enforcement of federal law or local ordinances.  ECF No. 8 at 29-32.

11      A.    Standards Governing Motion to Dismiss

12          1.   Standards Under Fed. R. Civ. P. 12(b)(1)

13      It is well established that the party seeking to invoke the jurisdiction of the federal court

14  has the burden of establishing that jurisdiction exists.  KVOS, Inc. v. Associated Press, 299 U.S.

15  269, 278 (1936); Assoc. of Medical Colleges v. United States, 217 F.3d 770, 778 79 (9th Cir.

16  2000).  On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the standards that must be

17  applied vary according to the nature of the jurisdictional challenge.  Here, the challenge to

18  jurisdiction is a facial attack, "which means that the state officials 'assert[ ] that the allegations

19  contained in [the] complaint are insufficient on their face to invoke federal jurisdiction.'"  Lacano

20  Investments, LLC v. Balash, 765 F.3d 1068, 1071 (9th Cir. 2014) (quoting Safe Air for Everyone

21  v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005)).  For a facial

22  attack, the court "must accept all of the factual allegations in the complaint as true."  Lacano, 765

23  F.3d at 1071 (citing Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004)).

24          2.   Standards Under Fed. R. Civ. P. 12(b)(6)

25      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

26  accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556

27  U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In a

28  plausible claim, "the plaintiff pleads factual content that allows the court to draw the reasonable

1  inference that the defendant is liable for the conduct alleged." Iqbal, 556 U.S. at 678 (citing

2  Twombly, 550 U.S. at 545); see also Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th

3  Cir.2009) ("In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual

4  content,' and reasonable inferences from that content, must be plausibly suggestive of a claim

5  entitling the plaintiff to relief."). The court must accept plaintiffs' factual allegations as true, but

6  is not required to accept plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. Courts are

7  not required to accept as true legal conclusions that are framed as factual allegations. Id.

8  Complaints by plaintiffs proceeding pro se are construed liberally when being evaluated under

9  Iqbal, with the plaintiff afforded the benefit of any doubt. Hebbe v. Pliler, 627 F.3d 338, 342 (9th

10  Cir. 2010).

11          B.          Judicial Notice and Treatment of Plaintiff's Exhibits

12          Defendant has requested judicial notice of the content of plaintiff's profile on California's

13  Megan's Law website (ECF No. 8 at 3, n.2), and plaintiff has filed several exhibits he wishes the

14  court to consider. ECF No.16 at 26-45, Ex. A-E (affidavits attesting to vigilantism suffered by

15  plaintiff and those close to him) and ECF No. 23, including Ex. F-M (legal argument and exhibits

16  containing information on various local ordinances, state codes, alleged legislative statements,

17  and alleged government reports). The court will take judicial notice of plaintiff's profile on the

18  California Megan's Law website, but will not take judicial notice of plaintiff's filings at ECF No.

19  23. Also, for the reasons that follow, the court will not take judicial notice of plaintiff's witness

20  declarations at ECF No. 16 Ex. A-E, but will consider them as a proffer of factual allegations

21  plaintiff might include if he were given an opportunity to amend his complaint.

22          "Ordinarily, a court may look only at the face of the complaint to decide a motion to

23  dismiss," Van Buskirk v. Cable News Network, 284 F.3d 977, 980 (9th Cir. 2002), and cannot

24  "consider[ ] evidence outside the pleadings," United States v. Ritchie, 342 F.3d 903, 907 (9th Cir.

25  2003). However, exceptions exist for "documents attached to the complaint, documents

26  incorporated by reference in the complaint, or matters of judicial notice," which a court may

27  properly consider "without converting the motion to dismiss into a motion for summary

28  judgment." Id. (citations omitted). A document is "incorporated by reference into a complaint if

4

1    the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

2    claim," and "[c]ourts may only take judicial notice of adjudicative facts that are not subject to

3    reasonable dispute" or "some public records." Id. at 908-09 (citations and internal quotation

4    marks omitted).

5         The court will take judicial notice of plaintiff's profile on California's Megan's Law

6    website because it is a public record from an administrative body of the type subject to judicial

7    notice. See Ritchie, 342 F.3d at 909. Plaintiff's submission at ECF No. 23, however, contains

8    legal argument (ECF No. 23 at 1-11) and exhibits including compilations of apparent local

9    ordinances, links to Internet reports, and compilations of alleged legislative statements. (See,

10   e.g., ECF No 23 at Exh. F, which states on its face: "This collection is for information only and

11   makes no claims regarding its completeness or accuracy. Please check with the appropriate

12   jurisdiction"). This is not the type of document that is subject to judicial notice. To the extent

13   that plaintiff seeks to make the court aware of the content of relevant laws, the court is capable of

14   considering such laws without taking judicial notice of plaintiff's compilations. Unauthenticated

15   compilations of laws, legislative statements, and "government reports" are not public records

16   subject to judicial notice and will not be considered. To the extent plaintiff asks the court to

17   consider further argument in response to defendant's motion to dismiss, the court will not do so;

18   the time for plaintiff to file responsive briefing has expired and the matter has been submitted.

19   See E.D. Cal. Rule 230(c).

20        For similar reasons, the court cannot take judicial notice of the witness affidavits attached

21   to plaintiff's opposition to defendant's motion to dismiss. ECF No. 16 at Ex. A-E. Under Fed. R.

22   Civ. P. 12(b)(6), the court evaluates a motion to dismiss solely on the basis of the complaint, and

23   does not consider extrinsic evidence. Accordingly, the court will not consider the contents of

24   plaintiff's affidavits in determining whether the complaint states a claim. Instead, because these

25   exhibits indicate the type of factual material plaintiff could include in an amended complaint, the

26   court will consider plaintiff's Exhibits A-E for the limited purpose of its decision regarding leave

27   to amend.

28   ////

5

1          C.      To the Extent Plaintiff Challenges Local Laws and Federal Laws, He Has Not

2                  Established Subject Matter Jurisdiction

3          Throughout plaintiff's complaint he indicates that he is challenging the constitutionality of

4   not only California's SORA and Megan's Law, but also the federal SORNA and various other

5   unspecified local and federal laws, all pursuant to 42 U.S.C. § 1983. See, e.g., ECF No. 1 at 14-

6   16, 56. Attorney General Becerra contends that he may not be sued regarding application to

7   plaintiff of local ordinances and federal laws, because the only exception to Eleventh Amendment

8   Immunity does not extend to such claims and the court therefore lacks subject matter jurisdiction

9   over them.

10         In general, the Eleventh Amendment bars suits against a state, absent the state's

11  affirmative waiver of its immunity or congressional abrogation of that immunity. Krainski v.

12  Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010)

13  ("The Eleventh Amendment bars suits against the State or its agencies for all types of relief,

14  absent unequivocal consent by the state.") (internal citations omitted). Eleventh Amendment

15  Immunity is an affirmative defense, and therefore "must be proved by the party that asserts it and

16  would benefit from its acceptance." ITSI T.V. Prods., Inc. v. Agric. Associations, 3 F.3d 1289,

17  1291 (9th Cir. 1993). The Ninth Circuit has recognized that "[t]he State of California has not

18  waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal

19  court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's

20  Eleventh Amendment immunity." Brown v. California Dep't of Corrections, 554 F.3d 747, 752

21  (9th Cir. 2009).

22         Despite the general bar set by the Eleventh Amendment, a suit seeking only to enjoin the

23  proper state official from enforcing an unconstitutional state statute faces no Eleventh

24  Amendment sovereign immunity bar, pursuant to a narrow exception created by Ex parte Young,

25  209 U.S. 123, 157 (1908). See, Nat'l Audubon Soc'y, Inc. v. Davis, 307 F.3d 835, 847 (9th Cir.),

26  as amended, 312 F.3d 416 (2002) ("[u]nder the principle of Ex parte Young, private individuals

27  may sue state officials for prospective relief against ongoing violations of federal law").

28  However, the Ninth Circuit has repeatedly affirmed that the exception created by Ex parte Young

does not abrogate immunity for a state official with respect to laws they have no direct connection to. Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992) ("[U]nder Ex parte Young . . . there must be a connection between the official sued and enforcement of the allegedly unconstitutional statute, and there must be a threat of enforcement. We doubt that the general supervisory powers of the California Attorney General are sufficient to establish the connection with enforcement required by Ex parte Young.") Where the sued state official has no "direct authority [or] practical ability to enforce the challenged statute[,]" the Eleventh Amendment bars federal court jurisdiction. Nat'l Audubon Soc'y, Inc., 307 F.3d at 846.

In this case, plaintiff argues that defendant Becerra's general supervisory powers make him responsible for how local governments enforce SORA. ECF No. 16 at 5. Plaintiff points specifically to the following portion of the California Penal Code:

> A representative of the Department of Corrections and Rehabilitation, in consultation with a representative of the State Department of State Hospitals and a representative of the Attorney General's office, shall comprise the SARATSO [State-Authorized Risk Assessment Tool for Sex Offenders] Review Committee. The purpose of the committee, which shall be staffed by the Department of Corrections and Rehabilitation, shall be to ensure that the SARATSO reflects the most reliable, objective, and well-established protocols for predicting sex offender risk of recidivism, has been scientifically validated and cross validated, and is, or is reasonably likely to be, widely accepted by the courts. The committee shall consult with experts in the fields of risk assessment and the use of actuarial instruments in predicting sex offender risk, sex offending, sex offender treatment, mental health, and law, as it deems appropriate.

Cal. Penal Code § 290.04 (West), ECF No. 16 at 5. Nothing in this provision of state law demonstrates the Attorney General's responsibility for the enforcement of local laws or ordinances that place restrictions on sex offenders within local jurisdictions. Likewise, plaintiff has not shown that defendant is responsible for the implementation of the federal SORNA.

Plaintiff contends that defendant is responsible for the application and consequences of various local laws and ordinances because those local laws and ordinances identify plaintiff and impact him by and through his SORNA registration and Internet publication pursuant to Megan's Law. This argument fails. Although SORA requires registration and Megan's Law requires publication, local laws and ordinances do not reach plaintiff *because of* his registration or the

7

1  ensuing publication; they impact him *because of* his criminal convictions.

2        Because defendant Becerra is not responsible for enforcing the federal statute (SORNA)

3  or local ordinances, the Eleventh Amendment bars suit against him based on application of these

4  laws. Because Eleventh Amendment immunity is jurisdictional, the court's inquiry ends there.[2]

5        D.        Plaintiff's Sixth Cause of Action (Ex Post Facto) Does Not State a Claim

6        Plaintiff's opposition to the motion clarifies that his Ex Post Facto challenge is directed to

7  Megan's Law only, and not to SORA. For the reasons that follow, the court agrees with

8  defendant that binding authority compels dismissal of the claim on grounds that Megan's Law is

9  not a punitive law subject to the Ex Post Facto Clause.

10       "A change in law violates the Ex Post Facto Clause of the Federal Constitution when it

11  inflicts a greater punishment than the law annexed to the crime when committed." Gilman v.

12  Brown, 814 F.3d 1007, 1014 (9th Cir. 2016) (quoting Peugh v. United States,133 S. Ct. 2072,

13  2078 (2013)). In order to determine whether Megan's Law constitutes retroactive punishment

14  forbidden by the Ex Post Facto Clause, the court must undertake the two-step analysis prescribed

15  by Smith v. Doe, 538 U.S. 84 (2003). First the court "must decide whether the intent of the

16  California legislature" in enacting Megan's Law "was to impose punishment on sex offenders."

17  Hatton v. Bonner, 356 F.3d 955, 961 (9th Cir. 2004) (discussing and applying Smith). If the

18  answer is "yes," the court's analysis ends "because retroactive application of the statute would

19  constitute an ex post facto violation." Id. Second, if the intent of the California legislature was to

20  enact "a nonpunitive and civil regulatory regime," the court moves on to decide whether Megan's

21  Law "is so punitive either in purpose or effect as to negate the State's intention to deem it civil."

22  Id. (internal citations omitted). Under this second step, "'only the *clearest proof* will suffice to

23  override legislative intent and transform what has been denominated a civil remedy into a

24  criminal penalty.'" Id. (emphasis added).

25  _____
   [2] Even if this court had jurisdiction to consider a challenge to SORNA, it would be foreclosed by
26  United States v. Elk Shoulder, 738 F.3d 948 (9th Cir. 2013), which upheld the federal statute
   against an ex post facto challenge on grounds it is not punitive in nature. As to the local laws and
27  ordinances plaintiff believes to be unconstitutional, the complaint fails to identify them. No relief
   can possibly be granted if the court cannot identify the specific laws being challenged. Due to the
28  Eleventh Amendment bar, amendment to specify the challenged ordinances is not appropriate.

1    Smith v. Doe, supra, is the reigning Supreme Court precedent regarding the

2    constitutionality of sex offender registration laws.  The Smith Court rejected an ex post facto

3    challenge to Alaska's sex offender registration and notification system, which is very similar to

4    the California regime under SORA and Megan's Law.[3]  In Hatton v. Bonner, the Ninth Circuit

5    applied Smith's reasoning to California's SORA to find the statute non-punitive and the Ex Post

6    Facto Clause therefore inapplicable.  Hatton, 356 F.3d at 967.[4]  Although Hatton was a habeas

7    case brought under 28 U.S.C. §2254, the court's analysis of the constitutional question was not

8    framed primarily in terms of AEDPA deference.  Rather, the court conducted a de novo review of

9    the California statute pursuant to Smith, and concluded that the statute is not punitive either in

10   intent or in effect.  Hatton has since been cited by the Ninth Circuit for the substantive

11   proposition that California's Megan's Law is not punitive within the meaning of the Ex Post

12   Facto Clause.  Doe v. Harris, 640 F.3d 972, 975 n.3 (9th Cir. 2011).  Accordingly, the undersigned

13   concludes that Hatton governs, and forecloses, plaintiff's claim.

14        Following Hatton, the court now conducts the analysis required by Smith.

15            1.        Legislative intent

16        Determining whether the statute is civil or criminal "is first of all a question of statutory

17   construction."  Smith, 538 U.S. at 92 (quoting Kansas v. Hendricks, 521 U.S. 346, 361 (1997)).

18   The court must "consider the statute's text and its structure to determine the legislative objective."

19

20   ───────────────
[3]  Both states make similar information about sex offenders available to the public by posting the
information on a website.  Although the Alaska statute does not require sex offender information
to be posted on an Internet website, see Alaska Stat. § 18.65.087, "Alaska has chosen to make
21   most of the nonconfidential information available on the Internet."  Smith, 538 U.S. at 91.
Additionally, both states publicly disclose similar information.  The principal differences are as
22   follows: Alaska discloses the offender's "place of employment," while California does not;
Alaska discloses the offender's address, while California discloses it only for some offenses, and
23   only discloses the "community of residence and ZIP code" for the rest; and California requires
24   disclosure of the offender's motor vehicles and his "SARATSO" "risk" level, while Alaska does
not.  Compare Alaska Stat. § 18.65.087(b), with Cal. Penal Code § 290.46(b) (1), (c)(1) and
25   (d)(1).
[4]  The California Supreme Court has come to the same conclusion regarding SORA.  People v.
26   Castellanos, 21 Cal. 4th 785, 799 (1999) ("In sum, we conclude that sex offender registration
27   does not constitute punishment for purposes of ex post facto analysis, because the Legislature did
not intend such registration to constitute punishment and the provision is not so punitive in nature
28   or effect that it must be held to constitute punishment despite the Legislature's contrary intent.").

9

1    Id. The court notes that <u>Smith</u> was decided on summary judgment. However, <u>Smith</u> establishes

2    that this initial inquiry can be determined from the "text and... structure of the statute," in which

3    case this step can be determined on a motion to dismiss. See <u>Hendricks</u>, 521 U.S. at 361

4    ("Nothing on the face of the statute suggests that the legislature sought to create anything other

5    than a civil commitment scheme designed to protect the public from harm").

6                        a.        Objective as expressed in the statutory text

7       "The courts 'must first ask whether the legislature, in establishing the penalizing

8    mechanism, indicated either expressly or impliedly a preference for one label or the other.'"

9    <u>Smith</u>, 538 U.S. at 93 (quoting <u>Hudson v. United States</u>, 522 U.S. 93, 99 (1997)). In its

10    reasoning, the <u>Smith</u> Court relied in part on the <u>Hendricks</u> case, and review of <u>Hendricks</u> is

11    instructive. Such a review leads to the conclusion that the intent of the statute in this case, as

12    shown on the face of the statute, was not punitive.

13       In 1984, the defendant in <u>Hendricks</u> – who had "a chilling history of repeated child sexual

14    molestation and abuse, beginning in 1955," who refused treatment, and who always re-offended

15    when not incarcerated – was tried and convicted of "taking 'indecent liberties' with two 13-year-

16    old boys." <u>Hendricks</u>, 521 U.S. at 353-55. Ten years later – in 1994 – as Hendricks was

17    approaching his conditional release date, Kansas enacted a law permitting sexually violent

18    predators, such as Hendricks, to be civilly committed after their criminal prison terms were over.

19    <u>Hendricks</u>, 521 U.S. at 350. The state then invoked the new law and had Hendricks civilly

20    committed. <u>Hendricks</u>, 521 U.S. at 355-56. The Court first looked to the text and structure of the

21    civil commitment statute. The Court reasoned:

> 22    Here, Kansas' objective to create a civil proceeding is evidenced by
> 23    its placement of the Act within the Kansas probate code, instead of
>    the criminal code, Kan. Stat. Ann., Article 29 (1994) ("Care and
> 24    Treatment for Mentally Ill Persons"), as well as its description of
>    the Act as creating a "civil commitment procedure," § 59–29a01
> 25    (emphasis added). Nothing on the face of the statute suggests that
>    the legislature sought to create anything other than a civil
>    commitment scheme designed to protect the public from harm.
> 26

27    <u>Hendricks</u>, 521 U.S. at 361. Having found nothing "on the face of the statute" indicating it was

28    punitive, the Court stated:

10

> Although we recognize that a "civil label is not always dispositive," [Allen v. Illinois, 478 U.S. 364, 369 (1986)], we will reject the legislature's manifest intent only where a party challenging the statute provides "the clearest proof" that "the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention" to deem it "civil," United States v. Ward, 448 U.S. 242, 248 49 (1980).

Hendricks, 521 U.S. at 361. The Court then found that nothing in the statute undermined Kansas' stated intent of creating a civil procedure, rather than a means of "retribution or deterrence." Specifically, the Kansas law "does not make a criminal conviction a prerequisite for commitment;" no "scienter" is required for civil commitment; and there was no indication that retribution was intended.

In the case of California's Megan's Law, the statute itself provides:

> In order to ensure that members of the public have adequate information about the identities and locations of sex offenders who may put them and their families at risk, it is necessary that this act take effect immediately.

2004 Cal. Legis. Serv., Ch. 745, § 5 (A.B. 488) (West). This statement of intent satisfies the first Smith factor. The Alaska statute reviewed in Smith similarly was enacted after the legislature "determined that 'release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety.'" Smith, 538 U.S. at 93. Here also, there is nothing on the face of the statute that indicates that retribution is intended. In addition, the face of the statute only requires that information be disseminated; there is nothing to otherwise indicate intent to punish.

b.    Other factors

Some of the other factors cited in Hendricks are not present here. The legislature placed the Internet disclosure requirement in the Penal Code, which might indicate an intention to make it penal in nature. However, "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one." Smith, 538 U.S. at 94. Also, in this case, a criminal conviction is a prerequisite for inclusion in the website disclosure. Yet the Court in Smith made no mention of this factor even though a criminal conviction was a prerequisite in that case, too. The court concludes that the absence of these factors does not indicate that the

11

1    intention of the statute was punitive.

2              2.    Practical effect

3         The court must next consider whether Megan's Law "is 'so punitive either in purpose or

4    effect as to negate [the State's] intention to deem it civil.'"  However, where, as here, the face of

5    the statute shows the absence of a punitive intent, the court can "reject the legislature's manifest

6    intent" only where:

7              a party challenging the statute provides "the clearest proof" that
               "the statutory scheme [is] so punitive either in purpose or effect as
8              to negate [the State's] intention" to deem it "civil"....

9    Hendricks, 521 U.S. at 361.  Thus, in order for plaintiff to ultimately prevail, he must produce

10   evidence showing a punitive effect or purpose.

11        In analyzing the effects of Alaska's version of Megan's law, the Smith Court referred "to

12   the factors noted in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)," which serve

13   as "useful guideposts" in the ex post facto analysis.  Smith, 538 U.S. at 97.[5]  In the context of an

14   ex post facto challenge to a law requiring Internet disclosure of sex offender information:

15   [t]he factors most relevant to [the court's]... analysis are whether, in its necessary operation, the

as   regulatory scheme: (1) has been regarded in our history and traditions as a punishment; (2)

puni imposes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4)

tive. has a rational connection to a nonpunitive purpose; or is [5] excessive with respect to this

2.   purpose.  Id. at 97.  Regarding the first factor, the Smith Court analyzed arguably applicable

1    historical precedents – Colonial shaming, the pillory, physical branding, banishment – and found

22   that the Internet publication of sex offender information was not punitive when viewed in its

23   historical context.  Id. at 97-99.

24        On the second factor – "affirmative disability or restraint" – the Smith Court rejected the

25   "conjecture" that "'the procedures employed under the Alaska statute are likely to make

26   [respondents] *completely unemployable*' because 'employers will not want to risk loss of business

27   when the public learns that they have hired sex offenders.'"  Id. at 100 (emphasis in text).  The

28
     _____
     [5]  In Kennedy, the Supreme Court identified the factors which generally identify laws as punitive
     for constitutional purposes.  372 U.S. at 163-168.

                                        12

1  Court acknowledged that "the public availability of the information may have a lasting and

2  painful impact on the convicted sex offender," but it concluded that "these consequences flow not

3  from the Act's registration and dissemination provisions, but from the fact of conviction, already

4  a matter of public record." Id. at 101.  In rejecting the "conjecture" of disability or restraint, the

5  court stated that "[t]he record in this case contains no evidence that the Act has led to substantial

6  occupational or housing disadvantages for former sex offenders that would not have otherwise

7  occurred through the use of routine background checks by employers and landlords." Id.

8  On the third factor, the Supreme Court has noted that the traditional aims of "punishment"

9  are retribution and deterrence. Hendricks, 521 U.S. at 361-62 (referring to "the two primary

10  objectives of criminal punishment: retribution or deterrence").  As for deterrence, the Smith Court

11  found that even though Alaska conceded that the statute "might deter future crimes," that was not

12  enough to find that the statute was punitive. Smith, 528 U.S. at 102.  In general, "even if the

13  objective of the Act is consistent with the purposes of the Alaska criminal justice system, the

14  State's pursuit of it in a regulatory scheme does not make the objective punitive." Smith, 528

15  U.S. at 94.  Moreover, "Any number of governmental programs might deter crime without

16  imposing punishment.  'To hold that the mere presence of a deterrent purpose renders such

17  sanctions "criminal" . . . would severely undermine the Government's ability to engage in

18  effective regulation.'" Id. at 102 (quoting Hudson, 522 U.S. at 105).

19  As for retribution, the Smith Court rejected the argument that the statute was retributive

20  "because 'the length of the reporting requirement appears to be measured by the extent of the

21  wrongdoing, not by the extent of the risk posed.'" Smith, 538 U.S. at 102.  The Court reasoned

22  that even though the statute "differentiates between individuals convicted of aggravated or

23  multiple offenses and those convicted of a single nonaggravated offense," this differentiation is

24  also "reasonably related to the danger of recidivism," a legitimate regulatory concern. Id.

25  On the fourth factor, in reviewing the nearly identical statute in Smith, the Court stated

26  that "the Act has a legitimate nonpunitive purpose of 'public safety, which is advanced by

27  alerting the public to the risk of sex offenders in their communit[y].'" Smith, 538 U.S. at 102-03

28  (quoting the appellate decision under review).  The Smith Court also rejected the argument that

13

1  the statute was not narrowly enough drawn to accomplish the stated purpose, saying a statute "is

2  not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it

3  seeks to advance." Id. at 103.

4        On the fifth factor, the Smith Court held that the nearly identical reporting requirements of

5  the Alaska statute were not "excessive" in relation to the stated goals of the legislation. The

6  imposition of the reporting requirements without any individual findings of dangerousness were

7  found not be excessive. Id. at 103-04. The duration of the reporting requirements were found not

8  to be excessive. Id. at 104. The wide dissemination of sex offender information was found not to

9  be excessive. Id. at 104-05.

10        The question for the court on this motion to dismiss is whether the Complaint contains

11  "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

12  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Given the plain non-punitive intent

13  of Megan's Law, as discussed above, plaintiff's complaint must therefore allege facts showing

14  that the law has a punitive effect sufficient to "override" that legislative intention. Plaintiff's

15  complaint does not make such a showing. Plaintiff asserts that he is unable to live, work, or be

16  present in certain places, and that he is limited in how he can direct the upbringing of his children

17  and grandchildren. See ECF No. 1 at ¶¶ 13, 17. He alleges that potential landlords are reluctant

18  to rent to him because of his status as a sex offender. Id. at ¶ 20. He alleges that public

19  disclosure of his conviction exposes him to vigilantism and potential violence. Id. at ¶ 22. While

20  the court recognizes all of these as serious concerns, the reasoning of Smith compels the

21  conclusion that these consequences are the result a conviction that is a matter of  public record,

22  and thus they do not give Megan's Law a punitive intent. Smith, 538 at 101.

23        Plaintiff asserts that Smith is no longer good law in light of the Supreme Court's holding

24  in Packingham v. North Carolina, 137 S. Ct. 1730, 1732 (2017). In Packingham, the Court

25  considered a First Amendment challenge to a North Carolina law that made it a felony for a

26  registered sex offender "to access a commercial social networking Web site where the sex

27  offender knows that the site permits minor children to become members or to create or maintain

28  personal Web pages." Id. at 1733. Packingham has no impact on the validity of Smith; it is about

the "relationship between the First Amendment and the modern Internet" and not about the validity of laws requiring sex offender registration or publication of sex offender registries. Id. at 1736.

For all the above reasons, this court must follow Hatton in concluding that Megan's Law does not create a punitive regime subject to challenge under the Ex Post Facto Clause. As the Ninth Circuit explained in Doe v. Harris:

> We have already held that California's publication of its sex offender registry does not constitute 'punishment' within the meaning of the Ex Post Facto Clause. See Hatton v. Bonner, 356 F.3d 955, 963-64 (9th Cir. 2004); cf. Smith v. Doe, 538 U.S. 84 (2003) (holding the same for Alaska's Megan's law). We determined that the California legislature's purpose in passing Megan's Law was to protect the public by disclosing truthful information, not to punish sex offenders. See Hatton, 356 F.3d at 962. We also concluded that the law was not 'so punitive' in effect as to negate the legislature's public safety purpose. Id. at 967 (quoting Smith, 538 U.S. at 92).

Doe, 640 F.3d at 975 n. 3.

Plaintiff cites to decisions of courts in other circuits which have reached contrary conclusions regarding other sex offender registration schemes, see ECF No. 16 at 13, but this argument is unavailing. This court is bound by Supreme Court and Ninth Circuit precedent, and must follow that precedent regardless of contrary law from other sources. Plaintiff's sixth cause of action must be dismissed because California's Megan's Law is not punitive as a matter of law.

E.     Plaintiff's Seventh Cause of Action (Separation of Powers/Bill of Attainder) Does Not State a Claim

Plaintiff's seventh cause of action, which claims that SORA and Megan's Law constitute unconstitutional bills of attainder, likewise does not state a claim upon which relief can be granted. Article I of the Constitution contains a clause stating that "No Bill of Attainder . . . shall be passed." U.S. Const. art. I, § 9, cl. 3. A law constitutes a bill of attainder when it "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 468 (1977). The Bill of Attainder Clause is foundational to the doctrine of separation of powers. Id. at 469. "Just as Article III confines the Judiciary to the task of adjudicating concrete 'cases or

15

1    controversies,' so too the Bill of Attainder Clause was found to reflect the Framers' belief that the

2    Legislative Branch is not so well suited as politically independent judges and juries to the task of

3    ruling upon the blameworthiness of, and levying appropriate punishment upon, specific

4    persons.'" Id. (internal citations omitted).

5           The court begins with the assumption that statutes are constitutional. Heller v. Doe by

6    Doe, 509 U.S. 312, 320 (1993). Accordingly, "[o]nly the clearest proof suffices to establish the

7    unconstitutionality of a statute as a bill of attainder." SeaRiver Mar. Fin. Holdings, Inc. v.

8    Mineta, 309 F.3d 662, 669 (9th Cir. 2002). To determine constitutionality, the court "may only

9    look to [the law's] terms, to the intent expressed by Members of Congress who voted its passage,

10   and to the existence or nonexistence of legitimate explanations for its apparent effect." Nixon,

11   433 U.S. at 484. "Three key features brand a statute a bill of attainder: that the statute (1)

12   specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial." SeaRiver,

13   309 F.3d at 668.

14          Because Megan's Law does not inflict punishment for the reasons previously explained, it

15   is not a bill of attainder. See SeaRiver, 309 F.3d at 669. Because the determination whether a

16   law is punitive for bill of attainder purposes is effectively identical to that under the Ex Post Facto

17   Clause, id.[6], the same result is required. See, Kennedy, 372 U.S. at 167-68. Accordingly,

18   plaintiff's seventh cause of action must be dismissed.

19          F.     Plaintiff's Eighth Cause of Action (Cruel and Unusual Punishment) Does Not

20                 State a Claim

21          Plaintiff's claim that SORA and Megan's Law inflict cruel and unusual punishment

22   cannot survive a motion to dismiss. The Eighth Amendment forbids the imposition of "cruel and

23   unusual punishments." United States Constitution, Amend. VIII. The constitution's prohibition

24   against cruel and unusual punishment applies to criminal sentences. Ingraham v. Wright, 430

25   U.S. 651, 671-672, n. 40 (1977).[7] It does not apply after the state's power to punish has expired

26   _____
     [6] See also Smith, 538 U.S. at 96.

27   [7] The Eighth Amendment applies "only after the State has complied with the constitutional
     guarantees traditionally associated with criminal prosecutions. . . . [T]he State does not acquire

28   the power to punish with which the Eighth Amendment is concerned until after it has secured a

                                                  16

1    at the end of a sentence.  Because SORA and Megan's Law are not punitive in the constitutional

2    sense for the reasons already explained, see Kennedy, 372 U.S. at 167-68, plaintiff's Eighth

3    Amendment claim fails.

4         Plaintiff relies on a case from the District of Colorado, currently on appeal to the Tenth

5    Circuit, that found Colorado's sex offender registration statute to be punitive and thus implicate

6    the Constitution's prohibition of cruel and unusual punishment.  See Millard v. Rankin, 265 F.

7    Supp.3d 1211, 1229 (D. Colo. 2017) ("These similarities to historical forms of punishment weigh

8    in favor of finding that SORA's effects are punitive").  As discussed above, however, this court is

9    bound by the law of the Ninth Circuit and cannot deviate from binding precedent, even in light of

10   shifts in other localities.  Accordingly, a comparison of the California statutory scheme with

11   Colorado's is unnecessary.

12        G.       Plaintiff's Ninth Cause of Action (Involuntary Servitude) Does Not State a Claim

13        Plaintiff's claim that SORA and Megan's Law constitute involuntary servitude cannot

14   survive a motion to dismiss.  The Thirteenth Amendment's prohibition on involuntary servitude

15   was intended "to prohibit conditions akin to African slavery" and to "prohibit compulsion through

16   physical coercion."  United States v. Kozminski, 487 U.S. 931, 942 (1988) (internal citations

17   omitted).  The fact that an act is required of a citizen by the government does not necessarily

18   mean that the citizen, obliged to comply, has been subjected to involuntary servitude.  See, e.g.,

19   United States v. Gidmark, 440 F.2d 773, 774 (9th Cir. 1971) ("In an unbroken line of cases the

20   courts have held that conscription for military service or civilian work in lieu thereof does not

21   constitute involuntary servitude.")

22        Because Megan's Law does not impose any physical coercion or compulsory labor on

23   plaintiff, see Cal. Penal Code § 290.46, it cannot possibly constitute involuntary servitude.

24   Further, although plaintiff is correct that the Thirteenth Amendment's prohibition on involuntary

25   servitude extends beyond the exact conditions of African slavery, see Slaughter-House Cases, 83

26   U.S. 36, 69 (1872), it does not reach civil registration requirements like those imposed by SORA.

27

28   formal adjudication of guilt in accordance with due process of law."  Id.

1   What the Thirteenth Amendment forbids is forced labor (except as a punishment for crime).

2   United States v. Kozminski, 487 U.S. 931, 942 (1988).  While SORA does compel action by

3   plaintiff, the compelled action is not "service" and thus cannot constitute involuntary servitude in

4   the vein of African slavery, peonage, serfdom, or feudalism.  Plaintiff's ninth cause of action

5   must be dismissed.

6           H.      Leave to Amend is Not Warranted

7           If the court finds that a complaint or claim should be dismissed for failure to state a claim,

8   the court has discretion to dismiss with or without leave to amend.  Lopez v. Smith, 203 F.3d

9   1122, 1127 (9th Cir. 2000) (en banc).  Leave to amend should be granted if it appears possible

10  that the defects in the complaint could be corrected, especially if a plaintiff is pro se.  Id. at 1130-

11  31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be

12  given leave to amend his or her complaint, and some notice of its deficiencies, unless it is

13  absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citing

14  Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987)).  However, if, after careful consideration, it

15  is clear that a claim cannot be cured by amendment, the court may dismiss without leave to

16  amend.  Cato, 70 F.3d at 1006.

17          In this case, granting leave to amend would be futile because plaintiff's claims six through

18  nine cannot be saved by the allegation of additional facts.  Because the challenged statutes are not

19  punitive *as a matter of law*, and do not impose involuntary servitude, the claims cannot be cured

20  by amendment.  The court has considered whether the complaint could state a claim if it included

21  allegations of fact consistent with the affidavits that plaintiff submitted in opposition to dismissal.

22  These affidavits, ECF No.16 at 26-45, Ex. A-E, describe acts of harassment experienced by

23  plaintiff and those close to him.  Plaintiff argues that these experiences demonstrate the reality of

24  vigilantism to which he is subjected by SORA and Meghan's Law, and which thus demonstrate

25  the punitive effect of those laws.  However, statutes found to be civil in nature cannot be deemed

26  punitive "as applied" to a single individual.  Seling v. Young, 531 U.S. 250, 267 (2001).

27  Accordingly, plaintiff's proffer of facts about the consequences of registration to him do not

28  affect the analysis.  For the reasons already explained, California's regulatory scheme is not

punitive in its "necessary operation." See Smith, 538 U.S. 97.  This conclusion follows from the language, history and context of the statutes.  Because amendment therefore would be futile, dismissal of plaintiff's claims six through nine should be without leave to amend.

### III.  CONCLUSION

Based on the discussion above, IT IS HEREBY RECOMMENDED that defendant's motion to dismiss (ECF No. 8) be GRANTED and that plaintiff's claims six through nine be DISMISSED without leave to amend.  See Fed. R. Civ. P. 41(b); Local Rule 110.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of  28 U.S.C. § 636(b)(l).  Within twenty one (21) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: March 5, 2018

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE